ROBERT SWEENEY, APPELLANT, V. KERSTENS & LEE, INC., AND ROYAL & SUNALLIANCE INSURANCE COMPANY, APPELLEES.
688 N.W.2d 350

Filed October 22, 2004.    No. S-03-525.

Dirk V. Block, Jerylyn R. Bridgeford, and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellant.

Mark J. Peterson and Joseph M. Colaiano, of Koley Jessen, P.C., L.L.O., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

The plaintiff, Robert Sweeney, was injured in an accident that arose out of and was in the course of his employment, and was awarded workers' compensation benefits. Sweeney became clinically depressed, however, after his vocational rehabilitation counselor concluded that Sweeney's loss of earning capacity was only 55 to 60 percent. The question presented in this appeal is whether Sweeney's depression, which resulted from a disappointing vocational rehabilitation report, was proximately caused by Sweeney's original accident.

## BACKGROUND

Sweeney was injured in 1997 in an accident that the parties agree arose out of and was in the course of Sweeney's employment with the defendant, Kerstens & Lee, Inc. Sweeney had another accident in 1998, and the Workers' Compensation Court found that this accident also arose out of and was in the course of Sweeney's employment. Sweeney suffered from numbness and pain in his neck and arms as a result of his accidents. In March 2000, the single judge of the Workers' Compensation Court entered an award for temporary total disability benefits, permanent partial disability benefits, and payment of medical expenses. Because Sweeney had not yet reached maximum medical improvement, the single judge reserved ruling on Sweeney's entitlement to vocational rehabilitation.

In December 2000, Kerstens & Lee applied for modification of the award, alleging that Sweeney had reached maximum medical improvement. In response, Sweeney sought continued disability benefits and vocational rehabilitation. However, that motion for modification was dismissed without prejudice, and the parties agreed that Sweeney would be evaluated by Michael Newman, a vocational rehabilitation counselor. Sweeney participated in vocational rehabilitation, with little success. Newman eventually authored a loss of earning capacity report, dated January 20, 2002, that concluded Sweeney's future loss of earning power would "range from 55% to 60%."

Sweeney became severely depressed, and in the spring of 2002, he attempted suicide. Sweeney's neurosurgeon referred him to Dr. William Marcil, a psychiatrist, who diagnosed Sweeney with "Major Depression, single episode and Anxiety disorder, not otherwise specified." Marcil opined that the depression was "due to the significant degree of stress and loss that has evolved since his injury to his neck approximately three years ago." Marcil stated that Sweeney "has become demoralized, angry and threatened that he will not get the financial assistance that he feels is due to him given the residuals of his physical condition." Marcil concluded that "Sweeney is not capable of gainful employment at this time due to his psychiatric problems and his inability to handle any additional stress that may be imposed on him within a work environment." Based on Marcil's opinion, Newman stated that

"my opinion concerning . . . Sweeney's earning capacity would now change to a loss of 100%."

At Kerstens & Lee's request, Sweeney was evaluated by Dr. Bruce Gutnik, another psychiatrist. Gutnik opined that at the time of his evaluation of Sweeney, his diagnosis was "Major Depressive Disorder, single episode, in partial remission." Gutnik stated that "Sweeney's depressive episode was triggered by a court ruling in approximately May 2002 that his disability rating was '58%' and his understanding that this meant his benefits would be time limited." (Although Gutnik's opinion refers to a "court ruling" in "May 2002," it is apparent from the record that Gutnik intended to refer to Newman's January 20 loss of earning capacity report, and the parties have argued on that basis.) Gutnik further opined that Sweeney's "single episode of Major Depressive Disorder was not triggered, in my opinion, with a reasonable degree of medical certainty by pain or disability, but rather, by unhappiness with a court ruling."

Sweeney's case came before the single judge on another application by Kerstens & Lee to modify the award. The single judge found that Sweeney had reached maximum medical improvement and had suffered a total earning power loss of 60 percent, 55 percent of which was attributable to his 1998 accident and injury. The single judge ordered cessation of Sweeney's temporary total disability benefits and awarded permanent partial disability benefits. However, the single judge rejected Sweeney's claim that his depression rendered him totally disabled and disallowed Sweeney's claim for payment of psychiatric care expenses. The single judge reasoned:

> The Court finds the opinion expressed by Dr. Gutnik to be persuasive. Dr. Marcil speaks of how the plaintiff has been progressively concerned over his lack of returning to baseline physically and being unable to resume the work level that he previously enjoyed. Dr. Marcil was of the opinion that the plaintiff's self concept in general has been greatly transformed due to his lack of productivity and his perceived inadequacies compared with how he performed before the injury. However, the Court has noted that in the previous spring, Mr. Newman reported that Mr. Sweeney had been fully cooperative and compliant in working with Mr.

Newman to develop a vocational plan. Mr. Newman reported that the plaintiff consistently responded in a positive manner and demonstrated a strong commitment for returning to work. This positive attitude which Mr. Newman noted in the plaintiff suggests to me that it was indeed Mr. Newman's opinion and not the losses suffered by the plaintiff as a result of his accident and injury that caused the plaintiff to suffer the depression and anxiety.

The review panel of the Workers' Compensation Court affirmed the decision of the single judge, without comment.

The Nebraska Court of Appeals reversed the judgment of the Workers' Compensation Court review panel. *Sweeney v. Kerstens & Lee, Inc.*, 12 Neb. App. 314, 672 N.W.2d 257 (2003). The Court of Appeals stated, "[E]ven if we assume that Sweeney's depression resulted from Newman's initial opinion, Sweeney's psychiatric injuries are nevertheless still compensable. The Nebraska Supreme Court has stated that when an injury arises out of a person's employment, every natural consequence that flows from the injury likewise arises out of the employment." *Id.* at 319-20, 672 N.W.2d at 262. The court concluded that "without Sweeney's injury, there would have been no loss of earning capacity and thus no depression resulting from that loss." *Id.* at 320, 672 N.W.2d at 262. Consequently, the Court of Appeals concluded that the Workers' Compensation Court had erred in finding that Sweeney's depression and medical bills for treatment of depression were not compensable. *Id.* We granted Kerstens & Lee's petition for further review.

## ASSIGNMENTS OF ERROR

Kerstens & Lee assigns that the Court of Appeals erred in (1) finding that the single judge committed clear error in adopting the expert opinion of Gutnik and finding that Sweeney's depressive disorder and the medical bills resulting from the treatment of said disorder were not related to accidents and resulting injuries sustained while Sweeney was employed by Kerstens & Lee and (2) awarding attorney fees.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2002), an appellate court may modify, reverse, or set aside a Workers'

Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Bixenmann v. H. Kehm Constr.*, 267 Neb. 669, 676 N.W.2d 370 (2004).

## ANALYSIS

We note, initially, that the parties have premised their arguments on appeal as if Gutnik's opinion regarding the causation of Sweeney's depression is controlling. When the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *U S West Communications v. Taborski*, 253 Neb. 770, 572 N.W.2d 81 (1998). It is the role of the Nebraska Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe. *Ludwick v. TriWest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004). In this case, the compensation court found Gutnik's opinion to be more credible or persuasive. The Court of Appeals concluded that even assuming Gutnik's opinion was correct, Sweeney's depression was nonetheless compensable. *Sweeney v. Kerstens & Lee, Inc.*, 12 Neb. App. 314, 672 N.W.2d 257 (2003). Because we do not substitute our judgment regarding the credibility of expert witnesses for that of the compensation court, and because the parties have recognized that principle, the issue before us is whether Gutnik's opinion supports the Court of Appeals' determination that Sweeney's depression was proximately caused by his original work-related injury.

It is well settled in Nebraska workers' compensation law that a worker is entitled to recover compensation for a mental illness if it is a proximate result of the worker's injury and results in disability. *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991); *Johnston v. State*, 219 Neb. 457, 364 N.W.2d 1 (1985); *Davis v. Western Electric*, 210 Neb. 771, 317 N.W.2d 68 (1982); *Cardenas v. Peterson Bean Co.*, 180 Neb. 605, 144 N.W.2d 154 (1966); *Haskett v. National Biscuit Co.*, 177 Neb. 915, 131 N.W.2d 597 (1964); *Lee v. Lincoln*

*Cleaning & Dye Works*, 145 Neb. 124, 15 N.W.2d 330 (1944). Where the evidence is sufficient to permit the trier of fact to find that a psychological injury is directly related to the accident and the employee is unable to work, the employee is entitled to be compensated. *Kraft, supra,* citing *Johnston, supra.* See, generally, 3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 56.05 (2003).

In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act. *Owen v. American Hydraulics,* 254 Neb. 685, 578 N.W.2d 57 (1998). A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred. *Lalley v. City of Omaha,* 266 Neb. 893, 670 N.W.2d 327 (2003); *Sacco v. Carothers,* 253 Neb. 9, 567 N.W.2d 299 (1997).

In workers' compensation cases, a distinction must be observed between causation rules affecting the primary injury and causation rules that determine how far the range of compensable consequences is carried, once the primary injury is causally connected with the employment. *Rosemann v. County of Sarpy,* 237 Neb. 252, 466 N.W.2d 59 (1991). When the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of " ' "direct and natural results." ' " *Id.* at 258, 466 N.W.2d at 63. A cause of an injury may be a proximate cause, notwithstanding that it acted through successive instruments of a series of events, if the instruments or events were combined in one continuous chain through which the force of the cause operated to produce the disaster. *Meyer v. State,* 264 Neb. 545, 650 N.W.2d 459 (2002).

In this case, however, Gutnik's opinion, adopted by the single judge of the compensation court, clearly established that Sweeney's depression was entirely attributable to Newman's loss of earning capacity report, which Sweeney believed would have an unfavorable impact on his compensation litigation. Gutnik

opined that Sweeney's depressive disorder "was not triggered, in my opinion, with a reasonable degree of medical certainty by pain or disability, but rather, by unhappiness with a court ruling." This opinion is clearly distinguishable from that in a case such as *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991), in which this court affirmed an award of workers' compensation benefits to a worker whose traumatic neurosis was attributed, by expert testimony, to both his physical injury and the psychological loss resulting from the worker's immobility and inability to work. Based on that expert opinion, we concluded that the single judge in that case was not clearly wrong in finding that the worker's disabling condition was the proximate result of the work-related accident. *Id*. Here, however, Sweeney's disabling condition was found to result in no part from physical loss, but entirely from an unfavorable loss of earning capacity report.

Under comparable circumstances, it has generally been held that a psychological injury resulting solely from the process of compensation or litigation is not proximately caused by the underlying accident. See, *Ryan v. W.C.A.B. (Community Health Serv.)*, 550 Pa. 550, 707 A.2d 1130 (1998) (psychological injury triggered by lawsuit over work-related accident not product of accident); *Keller Mfg. & Bitum. Cas. v. Hoke*, 215 Va. 525, 211 S.E.2d 82 (1975) (mental condition aggravated by involvement and termination of compensation payments not causally related to covered accident); *Jarosinski v. Indust. Claim Appeals Office*, 62 P.3d 1082 (Colo. App. 2002) (litigation stress is intervening event, not compensable consequence of industrial injury); *Funaioli v. City of New London*, 61 Conn. App. 131, 763 A.2d 22 (2000) (work-related injury not cause of anxiety over pending workers' compensation claims); *Rodriguez v. W.C.A.B.*, 21 Cal. App. 4th 1747, 27 Cal. Rptr. 2d 93 (1994) (emotional reaction to medical examiner's opinion, and employer's reliance on opinion to terminate benefits, not compensable consequence of original industrial injury); *Motorola, Inc. v. Industrial Com'n*, 125 Ariz. 211, 608 P.2d 788 (Ariz. App. 1980) (psychological reaction to notice of claim status not injury caused by event arising out of employment). But see, *Coleman v. Emily Enterprises, Inc.*, 58 S.W.3d 459 (Ky. 2001) (work-related injury proximate

cause of anxiety over workers' compensation claim); *Detjen v. Workmen's Comp. Appeals Bd.*, 42 Cal. App. 3d 470, 116 Cal. Rptr. 860 (1974) (temporary disability from neurosis precipitated by reopening of workers' compensation claim is compensable), *disagreement recognized, Rodriguez, supra.*

Given Gutnik's opinion in this case, we are persuaded the applicable rule is that Sweeney's litigation stress was an intervening event that broke the causal connection between his depression and the original work-related accident. See, *Jarosinski, supra*; *Rodriguez, supra*; *Motorola, Inc., supra.* Sweeney's depression was not the result of a natural and continuous sequence beginning with an accident arising out of and in the course of his employment.

> "Strictly speaking, all consequences are 'natural' which occur through the operation of forces of nature, without human intervention. But the word, as used, obviously appears not to be intended to mean this at all, but to refer to consequences which are normal, not extraordinary, not surprising in the light of ordinary experience."

*Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 174, 425 N.W.2d 872, 882 (1988), quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 43 (5th ed. 1984).

While some anxiety over the progress of a workers' compensation claim is to be expected, we cannot say that the single judge erred in concluding that a major depressive episode, triggered solely by an unfavorable report from a vocational rehabilitation counselor, is not a normal or expected consequence of a work-related accident. The Court of Appeals reasoned that in this case, "the evidence shows that without Sweeney's injury, there would have been no loss of earning capacity and thus no depression resulting from that loss." *Sweeney v. Kerstens & Lee, Inc.*, 12 Neb. App. 314, 320, 672 N.W.2d 257, 262 (2003). But as previously noted, the proximate cause of an injury is that cause which in a natural and continuous sequence produces the injury *and* without which the injury would not have occurred. *Stahlecker v. Ford Motor Co.*, 266 Neb. 601, 667 N.W.2d 244 (2003). While the Court of Appeals correctly observed that Sweeney's depression would not have occurred without his work-related accident,

the court erred in concluding that Sweeney's depression was a natural, as opposed to extraordinary, result of the accident.

Based on the foregoing analysis, we conclude that the Court of Appeals erred in determining that Sweeney's depression was proximately caused by his work-related injury. The single judge acted within his discretion in crediting Gutnik's opinion and concluding, based upon that opinion and other competent evidence, that Sweeney's depression was not compensable.

Kerstens & Lee also assigns that the Court of Appeals erred in awarding attorney fees, based upon its conclusion that Sweeney's injury was compensable. Obviously, given that the Court of Appeals erred in reversing the judgment of the compensation court review panel, the Court of Appeals also erred in awarding attorney fees.

## CONCLUSION

The Court of Appeals erred in reversing the review panel's affirmance of the judgment of the compensation court finding that Sweeney's depression was not proximately caused by an accident arising out of and in the course of his employment. The Court of Appeals consequently erred in awarding attorney fees. The judgment of the Court of Appeals is reversed, and the cause is remanded to the Court of Appeals with directions to vacate its award of attorney fees and to affirm the judgment of the Workers' Compensation Court review panel.

REVERSED AND REMANDED WITH DIRECTIONS.